IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| CARLOS MORALES PIZARRO | : | NO. 18-44-1 |

MEMORANDUM

Bartle, J.                                               November 10, 2020

The Court has before it the petition of defendant Carlos Morales Pizarro for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

I

On April 11, 2018, defendant pleaded guilty to an indictment charging him with one count of possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iv). On December 17, 2018, this Court sentenced defendant to 60 months imprisonment to be followed by 4 years of supervised release. Defendant is currently serving his sentence at the Federal Correctional Institution Moshannon Valley ("FCI Moshannon") in Philipsburg, Pennsylvania with an estimated release date of April 14, 2022.

On September 8, 2020, defendant submitted a pro se motion for compassionate release. On September 22, 2020, counsel filed a subsequent motion for compassionate release on

1

behalf of defendant.  The Government thereafter filed its response to defendant's motion.

## II

Defendant's motion for compassionate release relies on § 3582(c)(1)(A) as recently amended by the First Step Act.  It provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>     (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>         (i)  extraordinary and compelling reasons warrant such a reduction
>         . . .
>
> and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Defendant has exhausted his administrative remedies.  Therefore, the Court turns to the elements that a defendant must

meet under § 3582(c)(1)(A)(i) to obtain a reduction in sentence. This section provides that a court may order compassionate release for "extraordinary and compelling reasons" but only if the reduction in sentence is "consistent with applicable policy statements of the Sentencing Commission."

Congress has also enacted 28 U.S.C. § 994(t) which provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The application note 1(A) of section 1B1.13 of the Sentencing Guidelines explains that "extraordinary and compelling reasons" exist where the defendant is: (1) "suffering from a terminal illness" including among others "advanced dementia;" (2) "suffering from a serious physical or medical condition;" (3) "suffering from a serious functional or cognitive impairment;" or (4) "experiencing deteriorating physical or mental health because of the aging process." The latter three grounds also require that the impairment "substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover."

III

Defendant asserts that compassionate release should be granted because of his pre-existing medical conditions of Type 2 diabetes, hypertension, and high cholesterol which "place him at high risk of severe illness or death if he contracts COVID-19." Defendant claims that his medical records from February, March, and May 2020 all indicate that his diabetes was "uncontrolled," though he notes that his blood glucose levels had stabilized in August 2020. In support of his motion, defendant avers that he: has served thirty-two months of his sixty-month sentence for a non-violent offense; will not be a danger to the community; and will be deported to a stable home in the Dominican Republic upon release. With respect to the pandemic, defendant provides extensive information about the potential dangers to those in prison facilities and the current rates of infection and testing in federal prisons.

The Government concedes that defendant's Type 2 diabetes is a serious medical condition since it increases the risk of a more serious case of COVID-19 according to the Center for Disease Control and Prevention ("CDC"). It argues, however, that defendant's medical records show that in July 2020 his diabetes was in "good" control and is being successfully treated

with medication and with dietary counseling.  The Government notes that high cholesterol is not a high-risk factor and that hypertension may increase risk from COVID-19, but the CDC is not conclusive on whether it increases the risk of serious cases of COVID-19.  Additionally, the Government contends that FCI Moshannon is engaged in rigorous protocols to stop the spread of COVID-19 and that the Bureau of Prisons has not reported one positive case of COVID-19 among any of the inmates at FCI Moshannon.

Despite defendant's medical condition, the Government argues that defendant should not be entitled to relief since there are other pertinent § 3553(a) factors at issue in this case.  Specifically, the Government maintains that defendant continues to present a danger to the community due to the quantity of fentanyl-laced heroin he pleaded guilty to distributing.  The Government disputes defendant's proposed living plan because it alleges that defendant has used a number of aliases, dates of birth, and social security numbers throughout his lifetime to avoid detection and would likely attempt to re-enter the country after deportation using an assumed name.  The Government also notes that releasing defendant to immigration facilities for deportation will likely increase his risk of contracting COVID-19.

The Court is, of course, mindful of the devastating worldwide pandemic and the special dangers the highly contagious coronavirus poses for the defendant and all others in prison. However, the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease. See United States v. Roeder, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). The Bureau of Prisons, including FCI Moshannon, has in place protocols to deal with this disease and the Attorney General has issued two directives to the Bureau of Prisons concerning early release of inmates. It has also been reported to the Court that no cases of coronavirus in any of the inmates have appeared so far at FCI Moshannon where defendant is detained.

Although the Court acknowledges that defendant has Type 2 diabetes, which the CDC recognizes as a risk factor for more serious cases of COVID-19, the Court's analysis does not end there. Section 3582(c)(1)(A) requires the Court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before the Court may reduce his sentence. These factors include the need to: "reflect the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect the seriousness of the offense;" "promote respect of the law;" and "afford adequate deterrence to criminal conduct."

In this regard, defendant avers that: "there was no evidence of violence" associated with his charge and plea, he did not carry or possess a firearm at the time of the offense, he is not the leader of a drug organization, and his criminal history is a Category 1. Defendant claims, and the Government agrees, that he has not committed any disciplinary infractions while incarcerated. In addition, defendant argues that a "sentence of time served also sufficiently serves the objectives of deterrence and protection, and it provides just punishment."

While the court accepts defendant's representation that he has stayed out of trouble in prison and that his underlying offense was not one of violence, these factors alone do not allow for his release. Under 28 U.S.C. § 994(t), Congress has made it clear: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. In any event, his rehabilitation does not outweigh other § 3553(a) factors which support the need for him to serve the sentence imposed.

The Court cannot ignore the seriousness of defendant's offense. As previously noted, defendant pleaded guilty to dealing a large quantity of heroin and fentanyl. This crime is of a serious nature, and defendant still has nearly half of his sentence left to serve. Additionally, defendant has given false names and dates of birth to the authorities on multiple

occasions and has already illegally re-entered the country following a previous deportation.  Releasing defendant now would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct.  See § 3553(a).

The Court, taking all the relevant facts into account, finds that Carlos Morales Pizarro has not established extraordinary and compelling reasons that warrant his entitlement to compassionate release.  Accordingly, the Court will deny the petition of defendant for compassionate release under 18 U.S.C. § 3582(c)(1)(A).